UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BRUNO J. BICOCCA, an individual,
DIANNA BICOCCA, an individual,

Plaintiffs,

v.

WELLS FARGO BANK, N.A.; NBS
DEFAULT SERVICES, LLC; and
DOES 1 through 20, inclusive,

Defendants.

No. 2:17-cv-01158-MCE-CMK

**MEMORANDUM AND ORDER**

On May 1, 2017, Plaintiffs Bruno J. Bicocca and Dianna Bicocca ("Plaintiffs") filed this action in state court against Defendant Wells Fargo Bank N.A. ("Wells Fargo") and Defendant NBS Default Services, LLC ("NBS"). Plaintiffs' Complaint alleges, <u>inter alia</u>, that Defendants proceeded with foreclosure proceedings against Plaintiffs' home in violation of California's Homeowner's Bill of Rights ("HBOR"), a 2012 legislative reform package which made various changes to provisions in the California Civil Code pertaining to foreclosure safeguards. <u>See</u> Cal. Civ. Code § 2923, et seq. On June 1, 2017, Defendants removed Plaintiffs' lawsuit to this Court, citing diversity of citizenship pursuant to 28 U.S.C. § 1441(b).

///

1

Presently before the Court is Plaintiffs' Motion to Remand. ECF No. 5. For the following reasons, that Motion is DENIED.[1]

**BACKGROUND**

Plaintiffs obtained a mortgage loan for $247,500 from Wells Fargo's predecessor-in-interest, World Savings Bank FSB, in December of 2007. The loan was memorialized in a promissory note and secured by a deed of trust recorded against real property known as 124 W. 19th Street, Chico, CA 95928 ("Subject Property"). By January of 2017, Plaintiff was more than $21,000 in arrears on the loan, and Defendant NBS, who had been substituted in as Trustee on December 28, 2016, accordingly recorded a Notice of Default and Election to Sell Under Deed of Trust as to the Subject Property.

As indicated above, Plaintiffs originally filed suit in state court, which prompted Defendants, on June 1, 2017, to remove the case to this Court on diversity grounds. In addition to alleging that the citizenship of the parties is completely diverse (Plaintiffs being California residents, and Defendants Wells Fargo and NBS being citizens of South Dakota and Texas/Delaware, respectively), Defendants further assert, as they must in order to invoke jurisdiction on diversity grounds, that the amount in controversy exceeds $75,000. According to Defendants, because Plaintiffs seeks to permanently enjoin Wells Fargo from taking any action to protect its secured interest in the Subject Property (See Pl.'s Compl., Ex. A. to Notice of Removal, 14:6), Wells Fargo stands to lose its entire loan amount of $247,500, a sum well in excess of the jurisdictional minimum. Additionally, because Plaintiffs seek attorneys' fees, general, compensatory and consequential damages, and interest on top of the loan balance, Defendants maintain that the $75,000 amount in controversy requirement is satisfied.

///

---

[1] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefs pursuant to Local Rule 230(g).

Once the matter was removed to this Court, Plaintiffs brought a Motion for Temporary Restraining Order ("TRO") on July 7, 2017.  This Court proceeded to issue, on July 11, 2017, a TRO enjoining Defendant from performing any acts in furtherance of holding a Trustee's Sale of the Subject Property (which had been set for July 12, 2017), until it could hear Plaintiffs' request for a preliminary injunction.   That request has recently been denied.

In the meantime, through the Motion to Remand now before the Court, Plaintiffs ask the Court to find that the amount in controversy requirement for diversity jurisdiction is lacking.  They allege that since their Complaint does not explicitly seek damages in excess of $75,000, Defendants must establish by a preponderance of the evidence that the requisite amount in controversy has been established.  Plaintiffs maintain that their loan amount should not be the touchstone for that determination, and accordingly allege that Defendants cannot meet their burden in showing that more than $75,000 is in controversy.

## STANDARD

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to the federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a).  There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332.  A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States."  Id. § 1331.  A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a state and citizens or subjects of a foreign state . . . ."  Id. § 1332(a)(1)-(2).

///

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)). Courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). "[I]f there is any doubt as to the right of removal in the first instance," the motion for remand must be granted. Id. Therefore, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

**ANALYSIS**

As indicated above, Plaintiffs seek an order remanding this action to state court on the grounds that Defendants cannot show that this action satisfies the $75,000 amount in controversy requirement of 28 U.S.C. § 1332. Specifically, Plaintiffs contend that it is improper to treat the loan amount as the amount in controversy for purposes of a lawsuit brought under the HBOR. Plaintiffs further argue that Defendants cannot satisfy the amount in controversy requirement here by aggregating their requests for various types of damages, injunctive relief, and attorneys' fees. The Court disagrees. In Jerviss v. Select Portfolio Servicing, Inc., No. 2:15-cv-01904, 2015 WL 7572130 (E.D. Cal. November 25, 2015), under analogous circumstances, this Court already found that the loan amount is a proper measure of the amount in controversy in an HBOR case like this one. More specifically, in Jerviss, like the present case, the plaintiff argued that it was improper to treat the loan amount as the amount in controversy for purposes of a lawsuit brought under the HBOR. As we noted there, it is well established that the amount in controversy in actions seeking declaratory or injunctive relief is measured by the value of the object of the litigation. Gardner v. Nationstar Mortg. LLC, No. 2:14-cv-

1583, 2014 WL 7239496 at *2 (E.D. Cal. Dec. 16, 2015) (quoting Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002)).

But in HBOR cases, "the fact that Plaintiffs' complaint . . . seeks to enjoin a potential foreclosure, is not dispositive of whether the loan amount establishes the amount in controversy for purposes of diversity jurisdiction." Vonderscher v. Green Tree Servicing, LLC, No. 2:13-cv-00490, 2013 WL 1858431 at *3 (E.D. Cal. May 2, 2013). Instead, the court conducts a functional analysis of the amount in controversy based on the plaintiff's primary objective in bringing suit. In doing so, the court looks to whether the plaintiff primarily seeks to enjoin a foreclosure or instead primarily seeks damages under what essentially constitutes a common law fraud action. Id. at *4. To make this determination, the court considers whether the plaintiff is in default on its loan, whether a notice of default has been filed, and whether foreclosure proceedings are imminent. See id.; see also Lenau v. Bank of America, N.A., No. 2:15-cv-01374, 2015 WL 5522083 at *2 (E.D. Cal. Sept. 16, 2015).

Here, it is clear that Plaintiffs' desire for an injunction preventing Defendants from conducting a trustee's sale of their property predominates over their desire for unspecified damages under the HBOR. The Notice of Trustees' Sale was recorded on January 13, 2017, more than a year ago, and at that time Plaintiffs were already in default under the terms of their loan by some $21,733.95. Notice of Default, Ex. A to Notice of Removal, ECF No. 1, p. 46. See Vonderscher, 2013 WL 1858431 at *4. Furthermore, foreclosure proceedings would have already occurred had Plaintiffs not obtained a TRO from this Court. See ECF No. 7. Finally, Plaintiffs' prayer for relief does not merely seek to delay foreclosure proceedings temporarily, but instead explicitly seeks an "injunction prohibiting any further sale of [the] Subject Property. Compl., Ex. A to Notice of Removal, ECF No. 1, 14:6. Thus, Plaintiffs primarily seek to enjoin foreclosure here and the outstanding value of the loan is therefore the proper measure of the amount in controversy. See Vonderscher, 2013 WL 1858431 at *4.

///

As indicated above, Defendants' Notice of Removal alleges that the outstanding loan amount is $247,500, and Defendants provide factual support for that allegation in the form of both the Deed of Trust and the Notice of Default. See Notice of Removal, ECF No. 1, Ex. A, pp. 27-42, 46-49. Defendants have thus met their burden of establishing that it is more likely than not that the amount in controversy exceeds $75,000, and diversity jurisdiction is therefore proper.

Significantly, too, in a case decided after Jerviss, Rodriguez v. Wells Fargo Bank, N.A., et al, No. 2:16-cv-01904, 2016 WL 2602421 (E.D. Cal. May 5, 2016), this Court reached the same conclusion, again in the face of allegations that the amount of the mortgage loan in an HBOR case is not germane in determining whether the amount in controversy requirement for diversity jurisdiction has been satisfied. Relying on its previous Jerviss decision, the Court found that a functional analysis of the relief sought is necessary in order to determine whether the primary objective of a plaintiff's lawsuit is to enjoin foreclosure. Id. at *4. If preventing foreclosure is the plaintiff's primary purpose in bringing the lawsuit, "then the loan amount is the proper measure of the amount in controversy." Id., citing Jerviss, 2015 WL 7572130 at *4. Like Jerviss, the Rodgriguez decision analyzed the three Vorderscher factors discussed above and found that the plaintiff's primary purpose was to prevent foreclosure. Given that determination, Rodriguez held that the amount in controversy was, at a minimum, the amount of the plaintiff's loan. Therefore Rodriguez provides further support for a conclusion in this case that the amount in controversy is at least $247,500, the amount of Plaintiffs' loan. That sum alone is in excess of the $75,000 jurisdictional minimum even before Plaintiffs' other claimed damages are considered.

Because the parties in this case meet both the complete diversity and amount in controversy requirements of 28 U.S.C. § 1332, this Court has jurisdiction over Plaintiffs' claims for relief. Plaintiffs' Motion to Remand necessarily fails.

///

///

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion to Remand (ECF No. 5) is DENIED.

IT IS SO ORDERED.

Dated: February 21, 2018

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE